## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 25-02615-EG |
| Rosa Mack Lee, | Chapter 13 |
| Debtor(s). | **ORDER DISMISSING CASE WITH CONDITIONS AND CONTINUING HEARING REGARDING 11 U.S.C. § 329 REVIEW OF COUNSEL'S FEES** |

It is generally recognized within this District that a general power of attorney may confer authority to file a bankruptcy petition on behalf of another. South Carolina law permits a general power of attorney, if properly and broadly drafted and executed in accordance with applicable legal requirements, to confer upon the agent authority to pursue claims and litigation for the principal, including the authority to commence a voluntary bankruptcy case on the principal's behalf. Nonetheless, the delegation of such authority frequently invites scrutiny when questions arise concerning the facts and circumstances surrounding the execution of the power of attorney. Said differently, in certain circumstances, "there needs to be a 'failsafe to prevent abuse.'"[1] At times, issues arise concerning the validity of the power of attorney and, consequently, whether a bankruptcy filing was properly authorized. Even where a filing itself is valid, further issues may arise as to whether the attorney-in-fact should be permitted to continue acting as debtor's agent in the bankruptcy case. When debtors have bankruptcy representation, given counsel's direct contact with the individuals involved, the Court would expect the attorney to scrutinize and exercise appropriate diligence in reviewing and monitoring these issues—especially when the debtor has a history of prior filings initiated by family members acting as attorney-in-fact. Nevertheless, these

---

[1] *In re Matthews*, 516 B.R. 99, 105 (Bankr. N.D. Tex. 2014).

concerns sometimes go unrecognized until the Court or another party in interest brings them to

light.

The Court is now called upon to resolve these issues in the context of following matters:

(1) the Order to Appear and Show Cause as to Why the Case Should Not Be Dismissed
with Prejudice for Failure to Attend the Meeting of Creditors issued at the request of
the Chapter 13 Trustee based upon Debtor's failure to attend the meeting of creditors
held on September 2, 2025 ("Rule to Show Cause");[2]

(2) the Supplemental Rule to Show Cause as to Why the Case Should Not Be Dismissed
with Prejudice Because the Case May Have Been Filed Without Debtor's Proper
Authorization ("Supplemental Rule to Show Cause");[3] and

(3) the Motion to Determine Debtor's Competency and Validity of Debtor's General
Durable Power of Attorney ("Counsel's Motion") filed by Debtor's Counsel on behalf
of Rosa Mack Lee ("Debtor").[4]

The Chapter 13 Trustee filed a Response to both Counsel's Motion and the Supplemental Rule to

Show Cause.[5]  Debtor's Counsel filed a Reply to the Trustee's Response and a Response to the

Supplemental Rule to Show Cause (collectively, the "Reply").[6]  A hearing on these matters was

held and attended by Debtor; Jason T. Moss on behalf of Moss & Associates, Attorneys, P.A.

("Debtor's Counsel"); Beverly Ann Lee-Robertson ("Ms. Lee-Robertson"), Debtor's daughter and

power of attorney; Cynthia Johnson-Lee ("Ms. Johnson-Lee"), Debtor's daughter-in-law and

"medical" power of attorney; and the Chapter 13 Trustee (the "Trustee").  The Court heard

testimony from Debtor and Ms. Johnson-Lee regarding Debtor's mental competency.  Debtor also

introduced into evidence a "Physician's Affidavit for Emergency or Temporary Proceedings" and

"Examiner Report and Affidavit Regarding Capacity," dated August 28, 2025 (the "Physician's

---

[2] ECF No. 26, filed Sept. 3, 2025.
[3] ECF No. 34, filed Oct. 1, 2025.
[4] ECF No. 31, filed Sept. 22, 2025.
[5] ECF No. 38.
[6] ECF No. 39-41.

Report"),[7] as well as a copy of a property report from Kershaw County's public records regarding property at 1027 Field Trial Road, Camden, South Carolina.[8]  In Counsel's Motion and during the hearing, Debtor's Counsel raised concerns regarding certain pre-petition transfers of real estate property from Debtor to Ms. Lee-Robertson[9] that created a potential conflict of interest for Ms. Lee-Robertson and requested that the Court remove Ms. Lee-Robertson as Debtor's power of attorney and appoint Ms. Johnson-Lee to serve in her stead.  At the conclusion of the hearing, the Court took the matter under advisement to consider the following issues:

1. Did Debtor have the necessary contractual capacity to revoke her prior power of attorney and execute a new one in favor of her daughter, Ms. Lee-Robertson, such that the filing of this case was properly authorized?

2. Should Debtor be allowed to continue the case either without representation by an attorney-in-fact or with a Court-appointed guardian ad litem, or is dismissal of this case appropriate under 11 U.S.C. § 1307?

3. Does the compensation received by Debtor's Counsel in this case exceed the reasonable value of the services provided?

## BACKGROUND AND FINDINGS OF FACT

This is Debtor's third chapter 13 bankruptcy case.  Debtor's Counsel has represented Debtor in all three cases, all of which appear to have been filed to forestall a pending foreclosure action in the South Carolina Court of Common Pleas for Kershaw County, Civil Action No. 2024-CP-28-00046 (the "Foreclosure Action"), commenced on January 22, 2024.[10]

---

[7] Debtor's Ex. 2.

[8] Debtor's Ex. 1.

[9] Interestingly, the transfers appear to have been known to Debtor's Counsel since the beginning of the case and even in the prior cases.

[10] Statement of Financial Affairs, ECF No. 7.  *See also* Reply to Trustee's Response at ECF No. 39 at ¶ 7-11.

### A.  Case No. 24-01081-eg

Debtor's first case (Case No. 24-01081-eg) was filed on March 26, 2024, by Debtor's son, Michael J. Lee ("Mr. Lee"), as her attorney-in-fact.[11]  According to the Court's records, Debtor signed a durable power of attorney on December 20, 2023, appointing Mr. Lee as her agent ("First Power of Attorney").  The copy filed with the Court reflects that the First Power of Attorney was recorded in Kershaw County, South Carolina, on December 21, 2023.[12]  The First Power of Attorney vested in  Mr. Lee the authority to, among other things, "commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property . . .."[13]  Mr. Lee took the credit counseling briefing as required by 11 U.S.C. § 109(h) on Debtor's behalf.[14]

Mr. Lee signed Debtor's schedules and statement of financial affairs as her attorney-in-fact.[15]  Schedule A reflected ownership of Debtor's residence located at 1023 Field Trial Road in Camden, South Carolina (TMS#231-00-00-025), which is encumbered by two mortgages.  The statement of financial affairs further reflected the following pre-petition transfers of real property from Debtor to Ms. Lee-Robertson for no apparent consideration: (1) in September of 2023, a 0.25-acre portion of 1023 Field Trial Road and (2) in May of 2020, a 1.00-acre property (described as being located at 1023 Field Trial Road, Camden, South Carolina).[16]

---

[11] Case No. 24-01081-eg, ECF No. 1.

[12] Case No. 24-01081-eg, ECF No. 6.

[13] In the case of a valid power of attorney, it appears that such general language would provide the attorney-in-fact general authority to act for Debtor with respect to bankruptcy filings.  *See* S.C. Code Ann. § 62-8-212(7).

[14] Case No. 24-01081-eg, ECF No. 5.

[15] Case No. 24-01081-eg, ECF No. 13.

[16] The reference to 1023 Field Trial Road in the Statement of Financial Affairs regarding the 1.00-acre property appears incorrect.  According to the Special Referee's Order and Judgment of Foreclosure and Sale, filed on December 4, 2024, the property conveyed to Ms. Lee-Robertson on May 4, 2020, appears to be the property at 1027 Field Trial Road, a portion of which was sold at a foreclosure sale pursuant to that Order, in addition to Debtor's property at 1023 Field Trial Road.  *First Palmetto Bank v. Rosa Mack Lee et al*., Civil Action No. 2024-CP-28-00046 (Dec. 5, 2024).  While a copy of the Special Referee's Order and Judgment and Foreclosure and Sale was not introduced into evidence, the Court takes judicial notice of its entry and findings.

According to the Trustee, Mr. Lee appeared at the initial meeting of creditors to testify on Debtor's behalf as her attorney-in-fact.[17]  The Trustee continued the first meeting of creditors and requested documentation from a medical professional regarding Debtor's incompetency and inability to testify on her own behalf.  No such documentation, however, was provided prior to the continued meeting of creditors.  Debtor appeared at the continued meeting on May 28, 2024, to testify in her personal capacity, and, upon questioning, indicated that she could not remember signing the petition, schedules, statements, and other paperwork filed with the Court.  Accordingly, the Trustee continued the meeting a second time to give Debtor and Debtor's Counsel additional time to obtain documentation of Debtor's incompetence before allowing Mr. Lee to testify on her behalf as attorney-in-fact.

As the Trustee further recounted in the Response, she received documentation from Debtor's physician on May 29, 2024, advising on the status of Debtor's health issues and competence and recommending that the attorney-in-fact be allowed to testify on her behalf.[18]  Accordingly, Mr. Lee appeared at the second continued meeting of creditors on June 10, 2024, and offered testimony regarding Debtor's financial affairs.  Following several attempts to file a confirmable Chapter 13 plan, however, Debtor's first case was dismissed on October 22, 2024.[19]

### B.  Case No. 25-00044-eg

Debtor refiled for Chapter 13 relief on January 6, 2025 (Case No. 25-00044-eg).[20]  Mr. Lee also filed the second case as Debtor's attorney-in-fact using the same First Power of Attorney as in the first case[21] and took another credit counseling course on her behalf.[22]  According to the

---

[17] ECF No. 38.
[18] *Id.* While some of the documents referred to in the Trustee's Response were not submitted into evidence, no one at the hearing disputed the validity of any factual statements raised therein regarding the documents.
[19] Case No. 24-01081-eg, ECF No. 35.
[20] Case No. 25-00044-eg, ECF No. 1.
[21] Case No. 25-00044-eg, ECF No. 5.
[22] Case No. 25-00044-eg, ECF No. 4.

Trustee, Debtor's Counsel provided the same documentation previously provided to the Trustee in the first case as evidence of Debtor's incompetency and inability to testify at the meeting of creditors.[23]   Mr. Lee again appeared at the meeting of creditors on Debtor's behalf and offered testimony.   The statement of financial affairs filed in the second case indicated the same two transfers of property from Debtor to Ms. Lee-Robertson as disclosed in the first case.[24]

On March 19, 2025, finding that the proposed Chapter 13 plan did not comply with the requirements for confirmation, the Court entered an order giving Debtor ten (10) days to file an amended plan.[25]   Debtor failed to do so, and, on April 14, 2025, the Trustee filed a motion seeking dismissal of the case, which the Court granted on April 21, 2025.[26]

Upon the dismissal of the second case, the Foreclosure Action resumed in state court against Debtor and Ms. Lee-Robertson, and a judicial auction of the properties at 1023 Field Trial Road and a portion of 1027 Field Trial Road, Camden, South Carolina occurred on June 2, 2025.[27] The state court's docket reflects that the mortgage creditor did not seek a deficiency judgment in the Foreclosure Action, thus bidding did not remain open following the auction and the sale on June 2, 2025 was a final sale.[28]

---

[23] ECF No. 38 at ¶ 10.

[24] Case No. 25-00044-eg, ECF No. 6.  *See supra* at fn. 15.  The only difference from the first case was that in the description of "property or payments received or debts paid in exchange," the note indicated that "Debtor transfered [sic] property to daughter creating a life estate for administrative purposes".

[25] Case No. 25-00044-eg, ECF No. 19.

[26] Case No. 25-00044-eg, ECF Nos. 21 and 23.

[27] Report of Sale and Disbursements*, First Palmetto Bank v. Rosa Mack Lee et al*., Civil Action No. 2024-CP-28-00046 (Aug. 6, 2025).  The parties do not dispute that the sale occurred on June 2, 2025.  *See also* Reply of Debtor's Counsel at ECF No. 39.

[28] Supplemental Special Referee's Order and Judgment of Foreclosure and Sale, *First Palmetto Bank v. Rosa Mack Lee et al*., Civil Action No. 2024-CP-28-00046 (May 6, 2025). The Court takes judicial notice of the state court's public docket for the Foreclosure Action, which reflects that Ms. Lee-Robertson filed a Notice of Appeal in the Foreclosure Action on August 29, 2025—after the current bankruptcy case was filed.  During the hearing, Ms. Lee-Robertson affirmed that she had filed an appeal of the Foreclosure Action.  The Notice of Appeal filed on the state court's public docket in the Foreclosure Action on September 3, 2025, reflects that Ms. Lee-Robertson appealed an order entered August 21, 2025, by "The Honorable William Cox, Jr."  The only orders entered on the state court docket for that case on August 21, 2025 are Rules to Show Cause issued by Roderick M. Todd, Jr, as Special Referee for Kershaw County requiring Rosa Lee and Ms. Lee-Robertson to appear and show cause on September 5, 2025 at

### C.  Case No. 25-02615-eg

Less than three months following the dismissal of her second bankruptcy case, Debtor filed the current Chapter 13 case on July 8, 2025.[29]  This time, Ms. Lee-Robertson filed the case as Debtor's attorney-in-fact.[30]  The durable power of attorney purportedly granting Ms. Lee-Robertson the authority to file the bankruptcy case on Debtor's behalf was signed on or about April 23, 2025, and was recorded in Kershaw County the following day.[31]  According to the credit counseling certificate filed with the Court, Ms. Lee-Robertson took the required credit counseling course on Debtor's behalf on April 29, 2025.[32]  Debtor's original schedules and statement of financial affairs in the current case reflect ownership of the same property that was listed in her prior two cases—1023 Field Trial Road, in Camden, South Carolina ("Debtor's Residence").[33] The statement of financial affairs lists the following transfers as having occurred within two years before the petition date:

1. A transfer from Debtor to Ms. Lee-Robertson in September of 2023 of "0.25 acres of land located at 997-D (Part of 1023 Land) Field Trial Road, Camden SC 29020";

9:00 a.m. as to why a Writ of Assistance should not be issued by the court to the Sheriff of Kershaw County to remove them and their property from the properties at 1023 and 1027 Field Trial Road, Camden, SC 29020.

[29] Notably, the Bankruptcy Retainer Agreement filed with the Petition appears to have been signed by Debtor's Counsel and Ms. Lee-Robertson on April 28, 2025.  It is unclear to the Court why there was a delay between the signing of the Retainer Agreement and the filing of the case.

[30] ECF No. 1.

[31] ECF No. 6.  Based on the record before the Court, it is unclear whether Mr. Lee's power of attorney had been terminated or whether he resigned pursuant to S.C. Code Ann. §§ 62-8-110 or 62-8-118.  In Counsel's Motion (ECF No. 31), it was noted that at the § 341 meeting of creditors in the present case, Ms. Lee-Robertson indicated her mother had previously granted a power of attorney to her; then to her brother, Mr. Lee, while Ms. Lee-Robertson was pursuing a degree; and finally, again to her in early 2025. Ms. Johnson-Lee explained that Debtor "bounced around" between powers of attorney because she would get upset with one sibling and appoint another sibling to take over as her power of attorney.

[32] ECF No. 5.

[33] ECF No. 7, filed July 10, 2025.  Schedule A was later amended to add—for the first time—an additional 7-acre property at 997 D Field Trail Road in Camden, South Carolina, which appears to be unencumbered.  ECF No. 22.  At the hearing, Debtor's Counsel also informed the Court that there is an additional parcel of property at 1027 Field Trial Road that was transferred from Debtor to Ms. Lee-Robertson on September 6, 2023.  While it is not entirely clear if counsel was referring to an additional transfer of property that was not disclosed in either the original statement of financial affairs or amended one, the September 2023 transfer, appears to have been previously disclosed in Debtor's Schedules or Statement of Financial Affairs, although it was misidentified as being "997-D (Part of 1023 land)."  As the Trustee reported to the Court, 997-D is not part of 1023 Field Trial Road and is a separate property.

2.  A transfer of a 1987 Champion Mobile Home TMS # 246-00-00-MH1 from Debtor to Ms. Lee-Robertson in April of 2013, and subsequent transfer of that mobile home by Beverly Lee Robertson to MG&B Rentals in June of 2025; and

3.  A transfer from Debtor to Jeffrey K. Lee in April of 2022 of 997-A Field Trial Road, Camden SC TMS #246-00-00-100 (1.37 acres), subsequently transferred to MG&B Rentals in November of 2024.

While the above transfers of the mobile home to Ms. Lee-Robertson and 1.37 acre-property to Mr. Lee were not disclosed in the prior cases, the transfer of the 1-acre property to Ms. Lee-Robertson that was disclosed in the prior cases was not disclosed in the current case.[34]

On July 10, 2025, Debtor filed a motion seeking the imposition of the automatic stay pursuant to 11 U.S.C. § 362(c)(4) (the "Motion to Impose Stay"). The Motion to Impose Stay was supported by an affidavit of Debtor, which was signed on Debtor's behalf by Ms. Lee-Robertson.[35] Two creditors objected to the relief sought indicating that the Motion to Impose Stay was untimely as a foreclosure sale had occurred on June 2, 2025; thus, the property was no longer property of the estate.[36] The Court held a hearing on the Motion to Impose Stay on July 29, 2025, which was attended by Debtor's Counsel and counsel for the two objecting creditors. Neither Debtor nor Ms. Lee-Robertson made an appearance, and Debtor's Counsel withdrew the Motion to Impose Stay on the record.[37] At that hearing, the Court expressed concern that Debtor had not taken any of the credit counseling courses herself in the three bankruptcy cases and questioned whether an attorney-in-fact taking the course was the proper route as opposed to seeking a waiver of the requirement due to incapacity pursuant to 11 U.S.C. § 109(h)(4). The Court also expressed reservations

---

[34] While presumably it could be argued that it was not required to be disclosed because it was transferred in 2020—outside of the two-year lookback period for disclosures of transfers of Debtor's property in Section 18 of the Statement of Financial Affairs, it was disclosed in the prior cases despite being outside the required period.

[35] The Affidavit filed in support of the Motion to Impose Stay started with the following sentence: "Personally appeared before me, Rosa Mack Lee, who made solemn oath that. . .".

[36] ECF Nos. 13, 15.

[37] At the hearing on October 21, 2025, Ms. Lee-Robertson stated that both she and Debtor were present for the hearing but a paralegal who works for Debtor's Counsel told them to go to Debtor's Counsel's office.

regarding the filing of Debtor's case through a power of attorney apparently executed when Debtor's capacity was in question.[38]  Following the hearing, the Court entered an order denying the Motion to Impose Stay.[39]

Debtor filed Amended Schedules on August 15, 2025 ("Amended Schedules"), reflecting on Schedule A/B that the property at 1023 Field Trial Road was sold at foreclosure and disclosing, for the first time, a 7.04-acre property at 997 D Field Trail [sic] Road, Camden, SC 29020, TMS # 246-00-00-050 with an estimated value of $24,640.  Schedule D of the Amended Schedules was further amended to reflect that the judgment lien of First Franklin in the amount of $1,641.94 was secured by property at 997 D Field Trial Road property (as opposed to Debtor's Residence as listed in the original schedules); the description of the mortgages on Debtor's Residence at 1023 Field Trial Road held by First Palmetto Bank and State Credit Union were amended to reflect the property had been sold at auction with no deficiency; the description of the claim by Titlemax secured by a 2000 Mercury Grand Marquis was amended to note that the vehicle would be surrendered as opposed to being valued under the plan as originally indicated.  Amended Schedule I reflects that Debtor receives income from retirement and Social Security in the amount of $2,286.37, and Amended Schedule J shows that Debtor has monthly expenses of $1,723.00, leaving monthly net income of $563.37.  Debtor's chapter 13 plan proposes to avoid the judgment liens and the liens on household goods and to surrender the vehicle and to pay the Trustee $299.00 per month for 60 months[40]

The initial meeting of creditors pursuant to 11 U.S.C. § 341 in the current case was held on August 18, 2025.  According to the Trustee, Ms. Lee-Robertson appeared at the initial meeting

---

[38] Due to the undersigned Judge's scheduling conflict, Judge Helen E. Burris covered the hearing on July 29, 2025, and indicated on the record that she would let the undersigned know of the concerns raised at the hearing.
[39] ECF No. 20, entered Aug. 1, 2025.
[40] ECF No. 23, filed Aug. 15, 2025.

of creditors on Debtor's behalf, but Debtor did not appear.[41]  During that initial meeting, Debtor's

Counsel indicated to the Trustee that they were in discussions with Debtor's daughter and attorney-

in-fact as to whether the case should continue due to issues regarding the power of attorney.  The

Trustee questioned whether the most recent power of attorney executed in favor of Ms. Lee-

Robertson was valid because it had been executed after the Trustee was advised that the Debtor

was incompetent.  According to the Trustee, Ms. Lee-Robertson testified that there was a previous

power of attorney naming her as Debtor's attorney-in-fact that was never rescinded.[42]  Ms. Lee-

Robertson also made some statement that raised the Trustee's concerns, such as the fact that Debtor

"does not trust her family to help manage her funds."  Due to the issues regarding the validity of

the last power of attorney, the Trustee determined the meeting of creditors could not be conducted

and continued the meeting of creditors to September 2, 2025, to allow the parties time to work

through the issues surrounding Debtor's competency and to provide the Trustee with copies of any

previous power of attorney and/or subsequent revocation for Ms. Lee-Robertson.

Neither Ms. Lee-Robertson nor Debtor appeared at the continued meeting of creditors,

prompting the Trustee to request that the Court issue a rule to show cause as to why the case should

not be dismissed with prejudice for a period of one year.[43]  The Court issued the Rule to Show

Cause on September 3, 2025,[44] scheduling a hearing for October 21, 2025, and requesting Debtor's

and Debtor's Counsel's appearance at the hearing.

On September 22, 2025—approximately two months after the Court first raised concerns

regarding the validity of the power of attorney under which Ms. Lee-Robertson was acting as

---

[41] ECF No. 38.

[42] The prior power of attorney purportedly executed by Debtor in favor of Ms. Lee-Robertson was not presented into the record, and there is no evidence indicating whether it was revoked or remains valid.

[43] ECF No. 25.

[44] ECF No. 26.

Debtor's attorney-in-fact—Debtor's Counsel filed Counsel's Motion, also scheduled for a hearing on October 21, 2025.[45] Counsel's Motion requests that the Court (a) determine, pursuant to S.C. Code Ann. § 62-5-433,[46] whether Debtor is competent to proceed with her chapter 13 bankruptcy case independently and without the assistance of her daughter as her power of attorney and (b) enter an Order "appointing an expert to examine Debtor for a determination of competency." Debtor's Counsel further notes that "[u]pon information and belief provided to Counsel, Counsel was made aware of Debtor's significant health and memory issues, including some cognitive conditions commensurate with Debtor's advanced age."

In response to Counsel's Motion, the Court issued the Supplemental Rule to Show Cause on October 1, 2025, raising further issues for Debtor and/or Ms. Lee-Robertson to be prepared to discuss at the hearing on October 21, 2025, including (i) whether Debtor had the requisite mental capacity to appoint an attorney-in-fact at the time of her signing the durable power of attorney granting Ms. Lee-Robertson authority to take various actions on her behalf, (ii) where and under what circumstances Debtor signed the durable power of attorney, and (iii) whether or how the current Chapter 13 filing serves Debtor's best interests. It further required Debtor's Counsel to be prepared to address (a) what Debtor's Counsel did to confirm Debtor was informed and consented to the current bankruptcy filing at the time of signing the Voluntary Petition in the current case and (b) the fees received to date and whether any such fees should be returned to Debtor pursuant to 11 U.S.C. § 329. The Court further required Debtor's Counsel to file (i) copies of the Voluntary Petition and the schedules and statement of financial affairs bearing Debtor or Debtor's attorney-in-fact's signature and (ii) a declaration or affidavit attesting to the amount of fees received by

---

[45] ECF No. 31.

[46] It is not entirely clear to the Court how the section cited applies under these circumstances as it appears to pertain to procedures for settlement of claims in favor of or against minors or incapacitated persons.

Debtor's Counsel in this case as well as in each of Debtor's prior two bankruptcy cases by no later than October 14, 2025.   Any response or objection to the Supplemental Rule to Show Cause was required to be filed by that same date.

Lastly, the Supplemental Rule to Show Cause stated that the Court would hear arguments from Debtor, Counsel, or any other interested party whether cause exists to dismiss the case and, if so, whether it should be rendered void *ab initio*, or whether other relief, including but not limited to the relief sought in Counsel's Motion, was warranted.

On October 20, 2025—six days after the deadline set forth in the Supplemental Rule to Show Cause and the day prior to the scheduled hearing—Debtor's Counsel filed a late Reply, copies of the Voluntary Petition and Schedules/Statement, and Attestation of Attorney Fees.[47]   The Attestation reflects that to date, Debtor's Counsel received fees totaling $8,804.52 for his representation of Debtor in the three cases—$2,674.32 in C/A No. 01-01081-eg, $4,744.20 in C/A No. 25-00044-eg, and $1,386.00 in the third and current case.[48]   At the hearing, when questioned regarding the reason for the late Reply, Debtor's Counsel asserted that the responses were filed in the wrong case but provided no proof that this occurred.

In the Reply, Debtor's Counsel stated that he had obtained documentation online revealing transfers of real property from Debtor to Ms. Lee-Robertson, and when he attempted to question Ms. Lee-Robertson about the transfers, she was less than forthcoming and "seemed very keen to exclude her mother, the Debtor, from these conversations, indicating she did not wish to upset her mother."   Debtor's Counsel further represented that he is concerned that Ms. Lee-Robertson may not be acting in Debtor's best interests and that her actions have contributed to his inability to

---

[47] ECF Nos. 39-41.

[48] The Disclosure of Compensation of Attorney for Debtor filed in this case reflects that Debtor's Counsel agreed to accept $5,000.00 for legal services in connection with the case.

speak with Debtor, as Ms. Lee-Robertson has refused to participate in the § 341 Meeting of Creditors on behalf of her mother and has limited and restricted Debtor's Counsel's access and communication with Debtor. Debtor's Counsel indicated he suspected Debtor was not aware of the property transfers by her daughter. He proposed that the case should be allowed to continue because he had found another relative to act as Debtor's guardian in this case—Ms. Johnson-Lee.

### D. Testimony and Arguments Provided at the Hearing

During her testimony at the hearing, upon questioning by Debtor's Counsel, Debtor affirmed that she signed a power of attorney with Ms. Lee-Robertson on March 24, 2023, because she needed her help with her finances. She further affirmed that she signed another similar power of attorney appointing Ms. Lee-Robertson as her agent on April 24, 2025, and signed a medical power of attorney appointing her daughter-in-law, Ms. Johnson-Lee, as her agent in such capacity. Although Debtor testified that she has always been independent and does not need help with her property, Debtor appeared confused at times during her testimony and indicated that she did not know if she understood the questions she was being asked. When questioned by the Court regarding her age, Debtor was unsure and needed assistance from her daughter to answer that she is eighty-six years old. She testified that it was suggested by attorneys in Camden that she needed assistance with her finances. She also expressed confusion about whether she wanted to be in a chapter 13 case but indicated that she wanted to save her home at 1023 Field Trial Road in Camden, South Carolina.

Ms. Johnson-Lee testified that Debtor is her mother-in-law and serves as Debtor's medical power of attorney. She indicated that she attends all of Debtor's doctor's appointments and that Debtor has undergone several medical assessments, including recently, regarding her competency. Based on those assessments, her physician has concluded that Debtor has dementia and short-term

memory issues and is incompetent for purposes of handling her finances. She presented the Physician's Report, admitted into evidence as Debtor's Exhibit 2, reflecting Debtor's physician's opinion that—as of August 28, 2025—Debtor is unable to "receive, evaluate, or respond to information" or "to make or communicate decisions to meet the essential requirements for her physical health, safety, or self-care" and to manage property or financial affairs. The report further opines that Debtor lacks sufficient mental capacity to exercise certain rights, including buying, selling, or transferring real or personal property, bringing or defending any action at law or equity, or making, modifying, or terminating contracts.

In describing Debtor's mental condition, Ms. Johnson-Lee stated that Debtor will "make her own mind up," but "she can be encouraged to do things." She further testified that Debtor has, by choice, executed multiple powers of attorney. According to Ms. Johnson-Lee, Debtor became upset with Mr. Lee, her prior durable power of attorney who acted on her behalf in the prior two cases, and she executed a new power of attorney with Ms. Lee-Robertson. Apparently, Debtor was upset with Mr. Lee because he was using her income to pay her creditors, and she did not understand that she was mishandling her finances. Ms. Johnson-Lee opined that Debtor could not proceed in the bankruptcy case without assistance from a power of attorney.

At the hearing, when the Court questioned Debtor's Counsel regarding the purpose of the chapter 13 case considering the prepetition foreclosure of the properties, he indicated that Debtor has approximately $28,000.00 in unsecured claims that can be addressed in her bankruptcy case and has additional unencumbered property that needs to be addressed in the plan.[49] Debtor's Counsel stated that he believed Debtor would be able to present a confirmable plan paying 100%

---

[49] The Claims Register in the case reflects Debtor has $28,414.14 in filed unsecured claims and $828.04 in secured claims.

14

to unsecured creditors that would be feasible even after the payments are adjusted to account for the unencumbered property.

The Trustee, on the other hand, informed the Court that Debtor is two months behind in her chapter 13 plan payments, with the past due amount totaling $598.00. According to the Trustee, if the plan is amended to account for the unencumbered property, Debtor's plan payments would need to be increased to approximately $600 per month, which would present a feasibility issue. Due to the numerous case deficiencies and the fact that the case is not able to serve its intended purpose of saving Debtor's home from foreclosure because the sale of the Property was completed prepetition, the Trustee recommended that the case be dismissed. Upon questioning by the Court, Ms. Lee-Robertson affirmed that she would no longer be serving as power of attorney in this case, nor would she be directly involved in the case going forward.

## DISCUSSION AND CONCLUSIONS OF LAW

I.      ***Was Filing of the Current Case Properly Authorized and, If So, Should the Case Be Allowed to Continue Either Without Representation by an Attorney-in-Fact or an Appointed Representative?***

The circumstances surrounding the filing of Debtor's current chapter 13 case raise serious concerns as to Debtor's capacity at the time she executed the durable power of attorney in favor of Ms. Lee-Robertson and whether the filing of the case was properly authorized or in Debtor's best interests. "In order to execute or revoke a valid power of attorney, the principal must possess contractual capacity." *In re Thames*, 544 S.E.2d 854, 857 (S.C. Ct. App. 2001); *see also* S.C. Code Ann. § 62-8-105 (providing that a power of attorney "must be signed by the principal or in the principal's presence by another individual directed by the principal" to sign her name). "Principal" is defined under S.C. Code § 62-8-102(2) as an individual with contractual capacity. Under South Carolina law, "contractual capacity" has been defined as "a person's ability to understand, at the

time the contract is executed, the nature of the contract and its effect." *In re Thames*, 544 S.E.2d 854, 857 (S.C. Ct. App. 2001); *see also Gaddy v. Douglass,* 597 S.E.2d 12, 20 (S.C. Ct. App. 2004) ("Contractual capacity is generally defined as a person's ability to understand in a meaningful way, at the time the contract is executed, the nature, scope and effect of the contract.").

At the hearing, Debtor's Counsel argued that Debtor only lacks competency regarding her finances but is otherwise mentally competent to handle her affairs. The record before the Court, however, suggests otherwise. According to Ms. Johnson-Lee, Debtor has been mishandling her finances for approximately eight years and Debtor's physician has diagnosed her with dementia and memory loss and found her incompetent to handle her finances. Ms. Johnson-Lee's testimony was confirmed by the Physician's Report admitted into evidence. Debtor's testimony and apparent confusion during the hearing corroborated the Trustee's concerns regarding her capacity in the prior cases and the issues raised in the Physician's Report.

It is not entirely clear what Debtor's cognitive abilities were four months prior to the completion of the Physician's Report, when Debtor executed the power of attorney in favor of Ms. Lee-Robertson. However, in light of the Trustee's determination in both of Debtor's prior bankruptcy cases that she lacked sufficient mental capacity to testify regarding her financial affairs at her meeting of creditors,[50] and given the recent medical report regarding her cognitive abilities,[51] the record before the Court does not clearly establish—and indeed suggests otherwise—that Debtor had the "contractual capacity" necessary under South Carolina law to execute the power of attorney in favor of Ms. Lee-Robertson on April 23, 2025 and, in turn, provide her with the proper

---

[50] The documentation presented to the Trustee in the prior cases was not introduced into evidence; however, no one disputed that such documentation was presented to the Trustee or that it did not accurately reflect Debtor's purported incompetency at the time to handle her financial affairs.

[51] See Ex. 2. Notably, the Examiner Report and Affidavit Regarding Capacity sets forth three dates when the physician examined Debtor, with the first date being May 21, 2025, followed by July 28, 2025, and lastly August 28, 2025—the date of the Physician's Report.

authority to commence the current chapter 13 case.  Therefore, the Court denies Counsel's Motion

to the extent it seeks a determination that Debtor is competent to proceed with her chapter 13

bankruptcy case independently.  Based on the record, the Court further finds it unnecessary to

appoint an expert to further examine Debtor for a determination of competency.[52]

Even if Debtor did not have the required "contractual capacity" to execute the power of

attorney appointing Ms. Lee-Robertson as her agent, she possibly could have sought bankruptcy

relief on behalf of Debtor as a "next friend" pursuant to Fed. R. Bankr. P. 1004.1. "[T]he 'next

friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to

litigate, and it has been further suggested that a 'next friend' must have some significant

relationship with the real party in interest." *In re Brown*, 645 B.R. 524, 528 (Bankr. D.S.C. 2022)

(quoting *In re Maes*, 616 B.R. 784, 800 (Bankr. D. Colo. 2020)).[53]  In *Maes*, a case with similar

facts, the elderly debtor's daughter had filed a bankruptcy case as attorney-in-fact for her mother,

but the power of attorney upon which the daughter relied was not effective because it was executed

while the debtor was deemed incompetent.  616 B.R. at 794.  The bankruptcy court was required

to assess the debtor's competency and her daughter's role in filing the petition.  *Id.*  The court

concluded that the debtor was incompetent to make her own financial decisions, but the daughter

could still act as her mother's next friend to protect her mother's best interests despite the

ineffective power of attorney.  *Id.*  at 799.  The court allowed the case to continue and appointed

---

[52] It is unclear from Counsel's Motion under what authority such expert would be appointed and who would bear the costs associated with the appointment of an expert.

[53] In *Brown*, the Court noted that when Bankruptcy Rule 1004.1 is invoked, which appears to be the Rule under which the current situation should be analyzed, the Court must determine the following issues: (1) whether the Debtor was incompetent at the time of filing the petition and remains so; (2) whether the Debtor had a duly appointed representative at the time of filing the petition; (3) if the Debtor did not have a duly appointed representative at the time of filing the petition, whether the Intended Representative qualifies as a next friend for purposes of filing the petition; and (4) whether the Intended Representative should be appointed as guardian ad litem. *Brown*, 645 B.R. at 528. *See also Maes*, 616 B.R. at 796-97 (outlining decision tree in which the Court must engage when representative is sought for incompetent debtor).

the daughter as debtor's guardian ad litem, finding that the daughter appeared to have her mother's best interests in mind and at heart and was willing to continue to manage her mother's affairs and make financial decisions for the debtor. *Id.* at 801. In *Maes*, the court was presented with ample evidence that the daughter was acting in her mother's best interests. In this case, the record does not fully support that conclusion and there is no evidence before the Court to support a finding that Ms. Lee-Robertson had her mother's best interest in mind when she filed the current bankruptcy case on her behalf. Moreover, Ms. Lee-Robertson has indicated that she no longer wants to serve as Debtor's representative.

Rule 1004.1(b) provides that "[i]f an infant or incompetent person does not have a representative: (1) a next friend or guardian ad litem may file the petition; and (2) the court must appoint a guardian ad litem or issue any other order needed to protect the interests of the . . . incompetent debtor." Given the transfers from Debtor to Ms. Lee-Robertson prior to the filing of this case, her failure to appear at the meeting of creditors, and her failure to communicate with Debtor's Counsel,[54] at a minimum there appears to be an irreconcilable conflict of interest with Debtor that would preclude Ms. Lee-Robertson from continuing as Debtor's guardian ad litem in this case. While Ms. Johnson-Lee was presented as an alternative guardian ad litem for Debtor going forward, the testimony, the events in this case, and the record before it, does not lead the Court to conclude that continuing the case is in the best interest of the estate or Debtor for that matter. Accordingly, the Court declines to appoint a guardian ad litem.

## II.    *Is Dismissal Appropriate Under 11 U.S.C. § 1307?*

Pursuant to 11 U.S.C. § 1307, "on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under

---

[54] Ms. Lee-Robertson indicated that she had filed a complaint with the South Carolina Bar against Debtor's Counsel but that is outside the scope of this Order.

chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause."  Section 1307 further provides a non-exclusive list of examples of "cause," including "unreasonable delay by the debtor that is prejudicial to creditors" and "failure to commence making timely payments under section 1326 of this title".  11 U.S.C. § 1307; *see also In re Kemmerlin*, 659 B.R. 741, 749-50 (Bankr. D.S.C. 2024) (dismissing chapter 13 case where debtor's failure to propose a confirmable plan, cure case deficiencies or make continued mortgage payments had caused unreasonable delay that is prejudicial to creditors); *In re Pressley*, 625 B.R. 1, 5 (Bankr. D.S.C. 2021) (finding dismissal of chapter 13 case was appropriate based upon debtor's payment default and unreasonable delay that was prejudicial to rights of creditors).

Debtor, through her representative, has failed to make her plan payments and failed to attend her § 341 meeting of creditors.  Neither Debtor nor her representative have indicated a willingness or ability to promptly cure the outstanding payments due to the Trustee.  Moreover, the Court is unable to discern any benefit to Debtor from proceeding with this bankruptcy case, which has been pending since July of 2025, causing delay to her creditors.  The real property that was the subject of the Foreclosure Action has been sold, and Ms. Lee-Robertson has filed an appeal.  No automatic stay is currently in place to protect Debtor's property in this case,[55] and all issues relating to the foreclosure sale can be litigated in state court.

While Debtor's testimony cannot be fully relied upon given her confusion and mental condition, it was not clear from Debtor's testimony that she even wants to be in a chapter 13 bankruptcy case.  The Court finds that the concerns regarding Debtor's competency at the time she executed the durable power of attorney in favor of Ms. Lee-Robertson and whether the filing of

---

[55] *See* Order Confirming No Stay Imposed, ECF No. 18, filed July 29, 2025.

the case was therefore properly authorized further support dismissal of this case. *See In re Matthews*, 516 B.R. 99, 106 (Bankr. N.D. Tex. 2014) (court noted that it would not grant niece's motion for waiver of personal appearance by debtor and would dismiss case unless, within five (5) days niece filed supplement to motion demonstrating that debtor had requisite mental capacity to appoint attorney-in-fact at time of signing power of attorney); *In re Nakano*, No. 2:19-bk-11179, 2019 WL 2896199, at *25 (Bankr. C.D. Cal. June 26, 2019) (court dismissed case where strong circumstantial evidence indicating that attorney-in-fact did not have proper authorization to file case on debtor's behalf).

Both the Rule to Show Cause and the Supplemental Order to Show Cause provided notice that the dismissal of the case was sought with prejudice as to the refiling for at least one year. Pursuant to 11 U.S.C. § 105, the Court has the power to "issue any order . . . necessary or appropriate to carry out the provisions of this title." "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). The Court's authority under § 105 is broad but may not be used to contradict or override explicit mandates of other sections of the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415, 421 (2014); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007). After consideration of the facts and record before it, the Court finds it is appropriate and warranted to order that any bankruptcy case filed within 180 days from the entry of this Order shall not operate as a stay under 11 U.S.C. §362 of any foreclosure proceedings or appeal relating to Debtor's property at 1023 Field Trial Road, Camden, SC. *See In re Pressley*, 625 B.R. 1 (Bankr. D.S.C. 2021).

### III.     Did Debtor's Counsel's Compensation Exceeds Reasonable Value of Services Provided?

The Court also raised concerns regarding the purpose of this bankruptcy filing and the relief offered to Debtor by filing this case and has questioned the reasonableness of Debtor's fees pursuant to 11 U.S.C. § 329 (b).  According to Debtor, she filed bankruptcy to save her residence at 1023 Field Trial Road, Camden, South Carolina.  The Disclosure of Compensation of Attorney for Debtor filed in this case reflects that Debtor's Counsel agreed to accept $5,000 in payment for legal services on behalf of Debtor.[56]  The Attestation of Attorney Fees filed by Debtor's Counsel reflects that counsel received fees of $2,674.32 in C/A No. 01-01081-eg, $4,744.20 in C/A No. 25-00044-eg, and $1,386.00 in the third and current case, C/A No. 25-02615-eg.

"Section 329(b) authorizes courts to review all compensation received by debtor's counsel." *In re Busche*, C/A No. 15-02559-dd, slip op. (Bankr. D.S.C. Oct. 27, 2015) (citing *In re Stamper*, No. 02-09812-jw, 2005 Bankr. LEXIS 2722, at *17 (Bankr. D.S.C. Dec. 19, 2005)). Section 329(b) provides:

> If such compensation [paid to debtor's bankruptcy counsel] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to . . . the entity that made such payment.

11 U.S.C. § 329(b).  Fed. R. Bankr. P. 2017(a) authorizes the Court to determine whether any payment to Debtor's Counsel is excessive, providing that:

> On a party in interest's motion, or on its own, the court may, after notice and a hearing, determine whether a debtor's direct or indirect payment of money or transfer of property to an attorney for services rendered or to be rendered was excessive if it was made:
> (1) in contemplation of the filing of a bankruptcy petition by or against the debtor; or
> (2) before the order for relief is entered in an involuntary case.

---

[56] ECF No. 1.

"An attorney who seeks to represent a debtor in a bankruptcy case has a duty to analyze the client's financial situation, advise the client about whether to file for bankruptcy and if so, under what chapter, and assist the client in completing the petition, schedules, statements, and other documents necessary for the filing." *In re White*, 659 B.R. 68, 79 (Bankr. D.S.C. 2024) (citing cases). The attorney bears the burden of demonstrating the reasonableness of his fees. *Id.* The Court looks to a variety of factors when determining whether the fees received by an attorney are reasonable, including the nature and quality of services provided and time spent. *In re Busche*, No. 15-02559, 2015 WL 6501157, at *3 (Bankr. D.S.C. Oct. 27, 2015). "Where the petition and schedules filed on behalf of the debtor contain discrepancies, omissions, and inaccuracies, fee disgorgement is appropriate under § 329." *Id.* (quoting *In re Ohpark*, No. 10-10194, 2010 WL 1930187, at *2 (Bankr. E.D. Va. May 12, 2010)). When determining the disgorgement amount, courts typically consider the seriousness of the omission or error and the efforts made by the attorney to verify the accuracy of the documents. *Id.*

The Court is hard pressed to find a benefit to Debtor from Debtor's Counsel's services in this case for several reasons. First, this is Debtor's third bankruptcy case filed by Debtor's Counsel to prevent foreclosure of Debtor's home, and the Court does not understand why there was a significant delay between the signing of the retention agreement and the filing of the petition, which did not occur until after the foreclosure sale concluded; therefore, precluding the bankruptcy case from providing any relief to Debtor with respect to her home. Second, due to the two prior filings pending within the past year, at the time the case was filed there was no automatic stay in place pursuant to 11 U.S.C. § 362(c)(4)(A)(i). Debtor's Counsel filed a futile motion to impose the automatic stay, which was later withdrawn, after Debtor's home had been sold at a final sale and a chapter 13 plan proposing to cure payments to Debtor's mortgage creditor on property that

22

was no longer property of the estate.[57]  Finally, Debtor's Counsel has failed to meet Court-ordered deadlines by failing to timely file the Reply and other documents ordered to be filed by the Court in the Supplemental Rule to Show Cause.  For these reasons, it appears that the fees received by Debtor's Counsel in this case may have exceeded the reasonable value of the services provided. Since Debtor's Counsel was not provided with a full and fair opportunity to respond to these concerns at the hearing, the Court will set a further hearing to allow Debtor's Counsel to do so.

**IT IS, THEREFORE, ORDERED**:

1.  Debtor's case is hereby DISMISSED.

2.  Any future bankruptcy case filed by Debtor, or her heirs or assigns, within 180 days from the entry of this Order shall not operate as a stay under 11 U.S.C. § 362 of any foreclosure proceeding or appeal related to 1023 Field Trial Road, Camden, SC.

3.  Absent further order of this Court, any future bankruptcy filing by Debtor must be filed on her behalf by a proper guardian ad litem or other representative appointed by the state court.

4.  The relief sought in Debtor's Motion to Determine Debtor's Competency and Validity of Debtor's General Durable Power of Attorney is DENIED.

5.  A further hearing to consider the reasonableness of Debtor's Counsel's fees will be held on **December 2, 2025, at 2 p.m. at the J. Bratton Davis U.S. Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29201**.  Debtor's Counsel may voluntarily return the fees received in this case in the amount of $1,386.00 within fourteen (14) days of the entry of this Order and file an affidavit with the Court attesting to the return of such fees to Debtor.  To the extent that fees related to this case are voluntarily returned, the Court may decide to cancel the meeting if it deems it no longer necessary.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT
11/03/2025**

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 11/03/2025

---

[57] Debtor's Counsel explained that Debtor's bankruptcy case served a meaningful purpose because of the existence of unsecured creditors and a judgment and to preserve the 7-acre property, but Debtor's Counsel was presumably not aware of the 7-acre property until after the case was filed since the schedules were not amended to include the 7-acre property until August 15, 2025.